IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CLARENCE L. ROBERTS, et al., ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION No. 22-00187-KD-MU |
| ) | |
| BENTARIUS FONTA STEWART, et al., ) | |
|     Defendants. ) | |

**ORDER**

This action is before the Court on the Motion for Partial Summary Judgment, (Doc. 81), and Brief in Support, (Doc. 82), filed by Defendant Unlimited Deliveries, LLC d/b/a MK Trucking ("Unlimited"); the Response, (Doc. 89), filed by Plaintiffs Clarence L. Roberts ("Roberts") and Arkyla Miller ("Miller") (collectively "Plaintiffs"); and the Reply, (Doc. 91), filed by Unlimited. Upon consideration, and for the reasons below, the partial motion for summary judgment is **granted** as to Counts III and IV.[1]

**I.      Findings of Fact**

The "facts," as accepted at the summary judgment stage, "may not be the actual facts of the case." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013). For the purposes of summary judgment, the undisputed facts follow:

Bentarius Fonta Stewart ("Stewart") attended truck driving school at Delta Technical College in Jackson, Mississippi. (Doc. 83-1 at 2 p. 13). After passing a road test and an "inspection test," Stewart received a certificate and his commercial driver's license ("CDL") Class A in October or November 2017. (Id.). Stewart was then employed as a driver for several trucking companies. (Id.).

---

[1] Unlimited has also moved to exclude or limit the testimony of Plaintiffs' experts Dr. Todd Edmiston and Walter Guntharp (Doc. 84). The Court has not considered the testimony of either expert in ruling on partial summary judgment.

On July 26, 2018, Stewart was convicted of speeding (driving 93 MPH in a 70 MPH speed zone). (Doc. 89-10 at 2). On March 7, 2020, Stewart was issued a citation for careless driving. (Doc. 83-7 at 2).

On October 13, 2021, Stewart applied to work as a driver for Unlimited. (Doc. 83-2). The same day, Stewart met with Unlimited's hiring manager, Shane Walley ("Walley"), and Unlimited's safety manager, Josh Little ("Little"). (Doc. 83-1 at 3 pp. 34–35). Stewart was drug tested by Unlimited, which was negative. (Doc. 83-4). Unlimited also obtained Stewart's medical card, which revealed no medical issues, (Doc. 83-5), and Unlimited obtained Stewart's motor vehicle report ("MVR"), which contained no accidents, violations, or suspensions in the previous three years, (Doc. 83-6). Stewart drove for Unlimited from about October through December 2021. (Doc. 83-1 at 4 pp. 55–56).

On November 29, 2021, Stewart was offered the position of CDL instructor at Delta State Technical College. (Doc. 89-4 at 3). In December 2021, Stewart resigned from Unlimited because he "had a newborn." (Doc. 83-1 at 4). On January 19, 2022, Stewart was fired from Delta State for being "excessively absent." (Doc. 89-4 at 2).

In February 2022, Stewart returned to work for Unlimited. (Doc. 83-1 at 5 p. 59). Stewart took another drug test for Unlimited. (Id. at 6 p. 99). Unlimited obtained a new MVR, which showed a citation for careless driving in Mississippi issued on March 7, 2021. (Doc. 83-7 at 2). Stewart testifies that this citation was received because he had racing tires on his personal vehicle and that he did not tell Unlimited about the citation on his first application because he "had a family member working on it trying to get it thrown out." (Doc. 83-1 at 4 pp. 53–55). Stewart testifies that he discussed the citation with Little during his second hiring and told him that he was not actually driving the vehicle when he received the citation. (Id. at 4 p. 55).

In February 2022, Stewart received "Safer Hub" training for Cargo Securement, CDL Commercial Driver DOT Training, Clearinghouse Driver Orientation, Commercial Driver Defensive Driving Course, Commercial Vehicle Inspection Procedures, Driver Loading and Unloading Near a Truck Lift, MK Trucking—Safety Policies and Procedures, and Roadside Inspection—Interpersonal Skills. (Doc 83-8).

On March 15, 2022, Stewart ran through a stop sign and crashed into Plaintiff Roberts—who was driving on U.S. Highway 43 in Alabama. (Doc. 1-2; Doc. 89-1). The accident report indicates that Stewart's dog was "underneath his legs preventing him from braking." (Doc. 1-2 at 4). Stewart's brother's nephew was also riding in his vehicle when the accident occurred. (Doc. 89-5 at 2 p. 73). MK Trucking's employee handbook prohibits pets and unauthorized passengers from riding in company vehicles. (Doc. 89-14). Stewart was not hauling a load at the time of the accident. (Doc. 83-3 at 2).

## II.     Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome" of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine dispute of material fact exists. Id.

The party moving for summary judgment "bears the initial burden of demonstrating the absence of a genuine dispute of material fact." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011). The movant meets this burden by identifying affirmative evidence (pleadings, depositions, answers to interrogatories, admissions on file, etc.) to support its claim that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);

Fed. R. Civ. P. 56(c)(1)(A). If the nonmovant bears the burden of persuasion at trial, the movant may also make a prima facie showing of summary judgment by demonstrating that the nonmovant's evidence is insufficient to establish an essential element of its claim. Grange Mut. Cas. Co. v. Slaughter, 958 F.3d 1050, 1057 (11th Cir. 2020); Fed. R. Civ. P. 56(c)(1)(B).

If the movant meets its burden under Rule 56(c), summary judgment will be granted unless the nonmovant offers some competent evidence that could be presented at trial showing that there is a genuine dispute of material fact. Celotex, 477 U.S. at 324. If the movant met its burden by pointing "to specific portions of the record . . . to demonstrate that the nonmoving party cannot meet its burden of proof at trial," the nonmovant must "go beyond the pleadings" to designate specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(e).

When assessing a summary judgment motion, the court's function is not to make "credibility determinations" and "weigh the evidence." Anderson, 477 U.S. at 248. Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." FindWhat, 658 F.3d at 1307. Thus, summary judgment is only proper when a movant shows that no reasonable jury could find for the nonmovant—even when the evidence and inferences are drawn in the nonmovant's favor.

### III.   Analysis

Unlimited moves for summary judgment as to Count III (Negligent Hiring, Retention, Monitoring, Supervision and/or Training) and Count IV (Wanton Hiring, Retention, Monitoring, Supervision, and/or Training) of Plaintiffs' complaint. (Docs. 81, 82). Unlimited argues that Roberts's claims for Negligent and Wanton Hiring, Retention, Monitoring, Supervision, and/or Training fail because Stewart was not an incompetent driver. (Doc. 82 at 7). Unlimited does not address Counts I, II, or V in its motion for summary judgment. (Doc. 81, 82). Alabama law applies

4

because this case is before the court on diversity jurisdiction, the forum is Alabama, and the accident occurred in Alabama. See e.g., Erie Railroad v. Tompkins, 304 U.S. 64 (1938); Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941).

### A.   Negligent Hiring, Retention, Monitoring, Supervision, and/or Training

Alabama caselaw creates no distinction between wrongful supervision and wrongful training. Pritchett v. ICN Med. All., Inc., 938 So. 2d 933, 940 (Ala. 2006). Likewise, the general standard for negligent hiring, retention, monitoring, supervision, or training is the same under Alabama law. Plaintiffs must prove "that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent." See e.g., Mason v. McGuffey, No. 2:20-CV-320-WKW, 2022 WL 3640301, at *4 (M.D. Ala. Aug. 23, 2022). "[I]mplicit in the tort of negligent hiring, retention, training, and supervision is the concept that, as a consequence of the employee's incompetence, the employee committed some sort of act, wrongdoing, or tort that caused the plaintiff's injury." Jones Exp., Inc. v. Jackson, 86 So. 3d 298, 305 (Ala. 2010).

Incompetence is defined as the "quality, state, or condition of being unable or unqualified to do something." Incompetence, Black's Law Dictionary (12th ed. 2024). In Halford, the Alabama Supreme Court reviewed earlier and later editions of the Black's Law Dictionary definition of "incompetence," as well as caselaw, to explain that the concern is with "a person's actual driving ability, not a legal disqualification." Halford v. Alamo Rent-A-Car, LLC, 921 So. 2d 409, 415 (Ala. 2005). Thus, "the incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." Id. at 413–14.

Evidence of incompetence for purposes of negligent entrustment "may be established by evidence of prior acts of negligent or reckless driving, prior accidents, or prior acts of driving while intoxicated." Davis as Next Friend J.W. v. Grant, No. CV 1:21-00005-KD-M, 2022 WL 1557377,

at *10 (S.D. Ala. May 17, 2022) (citing Edwards v. Valentine, 926 So.2d 315, 321–322 (Ala. 2005)). "The same applies to the claim of negligent hiring and retention." Id. However, the law "does not require that [the driver] have a record be completely free of mistake." Askew v. R & L Transfer, Inc., 676 F. Supp. 2d 1298, 1303 (M.D. Ala. 2009). "Alabama courts have been especially reluctant to allow a negligent hiring claim when the driver's accidents or speeding tickets were in the distant past." Claussen v. PowerSecure, Inc., No. 318CV00607ALBSMD, 2019 WL 4941109, at *5 (M.D. Ala. Oct. 7, 2019).

For example, in Pryor, the Alabama Supreme Court concluded that "two speeding tickets and a suspended prosecution of a DUI charge over a 10-year period—is not sufficient to support a claim of negligent entrustment" against the defendant. Pryor v. Brown & Root USA, Inc., 674 So. 2d 45, 52 (Ala. 1995). Likewise, in Askew, the court concluded that "no evidence in the record suggests that" the driver was incompetent despite having six citations because those incidents were considered "blemishes on an otherwise clean professional driving record." Askew, 676 F. Supp. 2d at 1303–04.

Unlimited argues that Stewart was not an incompetent driver for several reasons. (Doc. 82 at 11). "At the time of the accident, Stewart had held a CDL for more than four (4) years." (Id.). "During that time, Stewart had not been involved in any accidents, and had only received one citation for careless driving while operating his personal vehicle." (Id.). In support, Unlimited compares Stewart to the driver in Craft v. Triumph Logistics, Inc., who the court determined was not incompetent despite "several moving violations." 107 F. Supp. 3d 1218, 1225 (M.D. Ala. 2015).

In Craft, the driver "was a professional commercial driver with several years of experience." 107 F. Supp. 3d at 1224. Here, Stewart is a professional commercial driver with several years of

experience. (Doc. 83-1). The driver in Craft "earned his commercial driver's license after receiving training and education at a technical college, and he passed the necessary tests to obtain his commercial license." Craft, 107 F. Supp. 3d at 1224. Here, Stewart received training and education at a technical college, and Stewart passed the necessary tests to obtain a CDL. (Doc. 83-1 at 2 p. 13). In Craft, the driver "worked several different commercial-truck-driving jobs prior to and between his terms of employment at [the company in question], and he passed a road test when hired by [that company]." Craft, 107 F. Supp. 3d at 1224. Here, Stewart did the same. (Doc. 83-1 at 2 p. 13). Finally, the driver in Craft was trained in defensive driving and his CDL had "never been suspended or revoked" prior to the accident. Craft, 107 F. Supp. 3d at 1224. Here, Stewart completed several training courses—including defensive driving—and his CDL had never been suspended or revoked prior to the accident. (Doc 83-8).

Plaintiffs argue that Stewart was incompetent to drive a professional truck because "he lacks the temperament, morals, and character of a professional truck driver requires to operate a vehicle safely on the public roads." (Doc. 89 at 5). In support, Plaintiffs cite Edwards v. Valentine for the proposition that "a plaintiff may prove negligent entrustment through evidence of habitual negligence OR general incompetence." (Id.) (citing Edwards, 926 So. 2d at 322). But it is unclear how "temperament, morals, and character" show habitual negligence or general incompetence. In Edwards, the court stated that "specifically, proof [of negligent entrustment] may 'be established by evidence of previous acts of negligent or reckless driving, . . . previous accidents, or previous acts of driving while intoxicated.'" Edwards, 926 So. 2d at 322. In that case, the driver had been "involved in *three* instances of driving under the influence of alcohol or a controlled substance" and was apparently unable to obtain a driver's license. Id. at 323. Edwards does not support Plaintiffs' argument that Stewart was incompetent to drive a professional truck.

7

Further, Plaintiffs rely on two cases—Brewster v. S. Home Rentals, LLC, No. 3:11CV872-WHA, 2012 WL 5869282 (M.D. Ala. Nov. 19, 2012) and Trinidad v. Moore, No. 2:15CV323-WHA, 2016 WL 4267951 (M.D. Ala. Aug. 11, 2016)—that are distinguishable from the present case. In both Brewster and Moore, the court denied summary judgment as to the negligent entrustment claims against the employer but granted summary judgment in favor of the employer on the wanton entrustment claims. Brewster, 2012 WL 5869282 at *6; Trinidad, 2016 WL 4267951 at *5.

In Brewster, the court denied summary judgment on the plaintiffs' negligent entrustment claim because the driver in question had "three speeding tickets" and "had a hydroplaning wreck that was her fault shortly after starting work with" the company. Brewster, 2012 WL 5869282 at *2–4. The court also relied on evidence that the driver had "violations of two [company] policies" relevant to driver eligibility. Id. One policy provision stated that "if an employee has three or more minor moving violations, the employee will not be eligible to drive." Id. at *2. The other provision required "notification of any wrecks of its drivers." Id. Against company policies, the driver in Brewster was still driving despite having three speeding tickets, and the driver failed to disclose the hydroplaning accident. Id.

In Trinidad, the court denied summary judgment on the negligent entrustment claim because "a question of fact [had] been created as to general incompetence" and "because there [were] questions of fact as to the cause of the accident." Trinidad, 2016 WL 4267951 at *4. There, the driver had "three infractions before he was hired." Id. at *3. After the driver was hired, he had "a speeding ticket, a preventable accident, and [company] policy violations including a failure to properly maintain equipment which resulted in air leaking from brakes and a falsification of logbooks." Id. Moreover, the company's representative testified that the driver's "infractions were

8

violations of the company's policy." Id. The court concluded that "a reasonable finder of fact could conclude that a reasonably prudent person with knowledge of [the driver's] infractions and violations of safety policy ought to foresee injury resulting from the entrustment of a vehicle to [the driver]." Id. at *4.

Plaintiffs argue that "Stewart is just like the defendant drivers in Brewster and Trinidad." (Doc. 89 at 6). Plaintiffs point to Stewart's "reckless driving conviction" and an allegation that he "was out on bail for a rape charge." (Doc. 89 at 6). Plaintiffs reference that Stewart was "caught going 93 in a 70-mph zone, which is reckless driving and considered a serious offense under Alabama law." (Id.). Plaintiffs write that Stewart "lied on his application about the number of miles he traveled as a professional truck driver and lied about his citation for careless driving directly violating the FMCSRs." (Id.). And Plaintiffs argue that "MK Trucking would have known about this had they performed any diligence whatsoever." (Id.).

To start, Stewart's record has far less blemishes than the drivers' records in Brewster and Trinidad. Stewart's record contains no accidents at all—either before or after being hired by Unlimited. The driver in Brewster was at fault for a hydroplaning accident while working for her company. Brewster, 2012 WL 5869282 at *2. The driver in Trinidad was involved in a "preventable accident" while working for his company. Trinidad, 2016 WL 4267951 at *3. Here, Stewart was issued one speeding ticket, and this ticket was issued more than three years before his initial hiring with Unlimited. (Doc. 89-10 at 2). The driver in Brewster had three speeding tickets, Trinidad, 2016 WL 4267951 at *3, and the driver in Trinidad had a speeding ticket while working for his company. Trinidad, 2016 WL 4267951 at *3. The driver in Trinidad also had three infractions before he was hired and violated his company's policy by failing to maintain equipment "which resulted in air leaking from brakes and a falsification of logbooks." Id. In short, Stewart's

9

record is much more similar to the driver in <u>Craft</u> who the court concluded was not incompetent despite "several moving violations." <u>Craft</u>, 107 F. Supp. 3d at 1225.

Moreover, Plaintiffs provide no support for the allegation that Stewart was out on bail for a rape charge—which is irrelevant as to whether he was an incompetent driver. And Stewart's lone speeding ticket was issued in 2018, more than three years prior to his first hire. (Doc. 89-10 at 2). This citation did not appear on Stewart's MVR, and it was outside of the Federal Motor Carrier Safety Regulations' ("FMSCRs") three-year reporting window. 49 CFR § 391.23(a)(1). Stewart's March 7, 2020, citation for careless driving did appear on Stewart's second MVR with Unlimited. (Doc. 83-7 at 2). This citation creates a blemish in Stewart's record. But it does not show that Stewart is unable to properly drive a vehicle. See <u>Askew</u>, 676 F. Supp. 2d at 1303 ("The law requires that a driver have had a 'demonstrated ability to properly drive a vehicle,' . . . ; it does not require that he have a record completely free of mistake.") (citation omitted)).

Likewise, Plaintiffs' acknowledgement of Stewart's application history is insufficient to prove that Stewart was an incompetent driver. "Infractions that are 'administrative in nature' do not bear on a driver's 'actual ability or inability to properly handle an automobile on the road.'" <u>Lawson v. Parkwood Indus. LLC</u>, 656 F. Supp. 3d 1283, 1290 (M.D. Ala. 2023) (quoting <u>Halford</u>, 921 So. 2d at 413). "Evidence of violation of company policy may be relevant under some circumstances . . . . For example, when the policies violated relate to a driver's eligibility to drive, they may bear on the competence inquiry." <u>Trinidad</u>, 2016 WL 4267951, at *3. Stewart's inaccurate reporting of his professional driving miles and Stewart's failure to disclose his careless driving citation are administrative in nature. Cf. <u>Lawson</u>, 656 F. Supp. 3d at 1290 ("[D]eficient logging habits and failure to comply with inspection obligations do not hinder [the driver's] ability to safely operate a vehicle and are . . . administrative in nature."). Plaintiffs have not demonstrated how Stewart's

10

eligibility to drive for Unlimited was in question or how Stewart was unable to safely operate a vehicle based on his application history.

Finally, Stewart's alleged violations of the law, regulations, and company policy at the time of the accident is not sufficient to prove that Unlimited knew or should have known that Stewart was incompetent. Even if it is determined that Stewart was negligent on this occasion, "[a] mistake or single act of negligence on the part of an employee does not establish incompetency . . . ." Southland Bank v. A & A Drywall Supply Co., 21 So. 3d 1196, 1216 (Ala. 2008). In other words: "Negligence is not synonymous with incompetency. The most competent may be negligent." Id. (quoting Pritchett, 938 So. 2d at 941). "[O]ne who is habitually negligent may on that account be incompetent." Prichett, 938 So. 2d at 941. Plaintiffs have shown that Stewart was violating company policy at the time of the accident by allowing a passenger and his dog in the vehicle. (Doc. 1-2 at 4; Doc. 89-5 at 2 p. 73; Doc. 89-14). But Plaintiffs have not shown that Stewart was habitually negligent. In Plaintiffs' own words: "Stewart was not incompetent to drive a professional truck because of his habitual negligence . . . ." (Doc. 89 at 5).

In sum, the undisputed facts do not indicate that Stewart was an incompetent driver. Like the driver in Craft, Stewart had "several years of truck-driving experience and a commercial driver's license in good standing, both demonstrating his 'ability to properly handle an automobile on the road.'" Craft, 107 F. Supp. 3d at 1225 (quoting Halford, 921 So.2d at 414). Thus, no reasonable jury could determine that Unlimited knew or should have known that Stewart was an incompetent driver.

In fact, Stewart's record has less blemishes than other drivers that Alabama courts have held were not incompetent as a matter of law. See Pryor, 674 So. 2d at 52 ("[T]wo speeding tickets and a suspended prosecution of a DUI charge over a 10-year period—is not sufficient to support a

claim of negligent entrustment."); Askew, 676 F. Supp. 2d at 1303–04 ("[N]o evidence in the record suggests that [the driver] was incompetent" despite two moving violations and four minor accidents.); Lawson, 656 F. Supp. 3d at 1290 (granting summary judgment in favor of trucking company despite driver having three minor infractions within one year of the accident). Accordingly, Unlimited's motion for summary judgment against Plaintiffs as to Count III (Negligent Hiring, Retention, Monitoring, Supervision and/or Training) is **granted**.

### B. Wanton Hiring, Retention, Monitoring, Supervision, and/or Training

Wantonness is defined as "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." Lafarge N. Am., Inc. v. Nord, 86 So. 3d 326, 333 (Ala. 2011) (quoting Ex parte Essary, 992 So. 2d 5, 9 (Ala. 2007)). Wantonness "is not to be confused with negligence (i.e., mere inadvertence)." Id. (quoting Tolbert v. Tolbert, 903 So. 2d 103, 114 (Ala. 2004)). Wantonness requires "a higher degree of culpability" than negligence. Id. (quoting Tolbert, 903 So. 2d at 114).

Wanton entrustment—like negligent entrustment—requires the plaintiff show that the employer knew, or should have known, that the employee was incompetent. Bruck v. Jim Walter Corp., 470 So. 2d 1141, 1144 (Ala. 1985). But wanton entrustment also requires showing that the employer entrusted the vehicle "while knowing that entrustment would likely or probably result in injury to others." Jordan ex rel. Jordan v. Calloway, 7 So. 3d 310, 317 (Ala. 2008).

The standard for wantonness is clearly higher than the standard for negligence. Indeed, the two cases that Plaintiffs use in support—Brewster and Trinidad—resulted in the granting of summary judgment for the employers on the plaintiffs' wantonness claims. Brewster, 2012 WL 5869282 at *6; Trinidad, 2016 WL 4267951 at *5. Even with this higher standard, Plaintiffs' claim for wanton

12

hiring, retention, monitoring, supervision, and/or training turns on Stewart's competency as a driver.

Stewart is not an incompetent driver under Alabama law. See supra, Part III.A. Therefore, no reasonable jury could find that Unlimited knew or should have known that Stewart was incompetent. And no reasonable jury could find that Unlimited engaged in wanton hiring, retention, monitoring, supervision, and/or training with regard to Stewart. Thus, summary judgment is **granted** against Plaintiffs as to Count IV.

### IV.   Conclusion

Unlimited has demonstrated the absence of a genuine dispute of a material fact by identifying affirmative evidence regarding Stewart's competency as a driver. Plaintiffs have failed to provide sufficient evidence from which a reasonable jury could find that Stewart was an incompetent driver under Alabama law. Therefore, Plaintiffs have failed to sustain their burden as to the claims of negligent or wanton hiring, retention, monitoring, supervision, or training of Stewart. Unlimited's motion for partial summary judgment as to Counts III and IV, (Doc. 81), is **granted.**

**DONE** and **ORDERED** this **22nd** day of **October 2024**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**